NO. 16-5990

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

STEVEN ABELL, et al.,

*Plaintiffs - Appellants*

vs.

SKY BRIDGE RESOURCES, INC.,

*Defendant - Appellee*

_____

On Appeal From The United States District Court
for the Western District of Kentucky
Judge Charles S. Simpson
CASE NO. 3:13-cv-00869-CRS-CHL

_____

**BRIEF FOR DEFENDANT - APPELLEE**
_____

<u>*s/ L. Joe Dunman*</u>
Garry R. Adams
L. Joe Dunman
CLAY DANIEL WALTON & ADAMS, PLC
101 Meidinger Tower
462 S. Fourth Street
Louisville, KY 40202
(502) 561-2005
*Counsel for Defendant-Appellee*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1, Defendant-Appellee, Sky Bridge Resources, Inc., makes the following disclosures:

1.    Are any of the above said parties subsidiaries or affiliates of a publicly owned corporation?

    Answer: No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

    Answer: No

> *s/ L. Joe Dunman*
> Garry R. Adams
> L. Joe Dunman
> Clay Daniel Walton & Adams, PLC
> 101 Meidinger Tower
> 462 S. Fourth Street
> Louisville, KY  40202
> (502) 561-2005
> *Counsel for Defendant-Appellee*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... ii

TABLE OF AUTHORITITES ........................................................ iv

COUNTER-STATEMENT REGARDING ORAL ARGUMENT ................. vii

COUNTER-STATEMENT OF ISSUES PRESENTED ................................ 1

COUNTER-STATEMENT OF THE CASE .................................................. 1

   I. FACTS ................................................................................... 2

   II. PROCEDURAL HISTORY ...................................................... 8

SUMMARY OF ARGUMENT ........................................................ 10

   I. THERE WAS NO BREACH OF CONTRACT .................................. 10

   II. THE PLAINTIFFS WERE NOT DENIED STATUTORILY REQUIRED PAY ....... 11

ARGUMENT ............................................................................... 13

   I. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' BREACH OF CONTRACT CLAIMS ............................................................... 13

   II. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' UNPAID WAGES CLAIM ............................................................ 23

     a. Plaintiffs' Claims as Stated in Their Third Amended Complaint and as Argued in Their Motion for Partial Summary Judgment, Fail as a Matter of Law .......................................................................... 23

     b. Plaintiff Cannot Raise on Appeal New Issues and Arguments Related to Unpaid Wages ..................................................................... 30

       i. *Routine Engagement in Compensable Work During Travel* ... 31

       ii. *Custom and Practice* ........................................................ 34

       iii. *Regular Working Hours* .................................................. 35

iv. *Overtime Calculations* ............................................................. 37

CONCLUSION ..................................................................... 41

CERTIFICATE OF COMPLIANCE.................................................. 42

CERTIFICATE OF SERVICE ....................................................... 42

DESIGNATION OF RECORD ....................................................... 43

# TABLE OF AUTHORITIES

## <u>Case Law</u>

*Aiken v. City of Memphis*, 190 F.3d 753 (6th Cir. 1999) ........................ 32, 33

*Anderson v. Britt*, 375 S.W.2d 258 (Ky. 1963) ............................................ 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................. 13

*Ariens v. Olen Mathieson Chemical Corp.*, 382 F.2d 192 (6th Cir. 1967) ... 20

*Bays v. Mahan*, 362 S.W.2d 732 (Ky. 1962) ................................................. 21

*Bradford v. Billington*, 299 S.W.2d 601 (Ky. 1957)  .................................. 21

*Caudill v. City of Maysville, Ky.*, 178 S.W.2d 945 (Ky. 1944) .................... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................ 13

*Cinelli v. Ward*, 997 S.W.2d 474(Ky. Ct. App. 1999) .................................. 16

*Dennis v. Watson*, 264 S.W.2d 858 (Ky. Ct. App. 1953) ....................... 15, 17

*Equitable Life Assurance Soc. v. Wells*, 101 F.2d 608 (6th Cir. 1939) ........ 14

*Fairlane Car Wash Inc. v. Knight Enters., Inc.*, 396 F. App'x 281 (6th Cir. 2010)  ........................................................................................................ 30

*Foster v. Barilow*, 6 F.3d 405 (6th Cir. 1993) ............................................. 30

*F. W. Stock & Sons, Inc. v. Thompson*, 194 F.2d 493 (6th Cir. 1952) ... 25, 29

*General Electric Co. v. Porter*, 208 F.2d 805 (9th Cir. 1953) .................... 18

*General Mills, Inc. v. Williams*, 132 F.2d 367 (6th Cir. 1942) .................... 25

*Harrison v. Clarksville*, 732 F. Supp. 810 (M.D. Tenn. 1990) ............. 19, 20

*Hayward v. Cleveland Clinic Found.*, 759 F.3d 601 (6th Cir. 2014) ..... 35, 40

*Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479 (6th Cir. 2006) ....... 13

*Hoheimer v. Hoheimer*, 30 S.W. 3d 176 (Ky. 2000). ................................... 14

*Jefferson Standard Life Ins. Co. v. Hurt*, 254 Ky. 603 (Ky. 1934) .............. 21

*Jones v. Linkes*, 267 S.W.2d 936 (Ky. 1954)........................................... 16, 17

*Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893 (Ky. 1992) ........................................................................................ 14

*Owens v. Local No. 169*, 971 F.2d 347 (9th Cir. 1992)................................ 18

*Parrish v. Newbury, Ky.*, 279 S.W.2d 229 (Ky. 1955)................................. 16

*Payne v. Novartis Pharms. Corp.*, 767 F.3d 526 (6th Cir. 2014)................ 13

*Ranier v. Mt. Sterling Nat'l Bank*, 812 S.W.2d 154 (Ky. 1991) ................. 16

*Reynolds Metals Co. v. Barker*, 256 S.W.2d 17 (Ky. 1953)........................ 15

*Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245 (5th Cir. 1986)................................................................................... 18, 20

*Rudd-Melikian, Inc. v. Merritt*, 282 F.2d 924 (6th Cir. 1960)..................... 15

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) .............. *passim*

*Shepler v. Crucible Fuel Co.*, 140 F.2d 371 (3rd Cir.1949) ........................ 19

*Singleton v. Wulff*, 428 U.S. 106 (1976) ...................................................... 30

*Skidmore v. Swift & Co*., 323 U.S. 134 (1944)............................................. 18

*Starr v. Louisville Graphite, Inc*., 2016 WL 1612940 (Ky. Ct. App. 2006)  27

*Taft Broad Co. v. United States*, 929 F.2d 240 (6th Cir. 1991)................... 35

*Transport Ins. Co. v. Ford*, 886 S.W.2d 901 (Ky. Ct. App. 1994).............. 15

*United States ex rel. TVA v. 1.72 Acres of Land*, 821 F.3d 742 (6th Cir. 2016) ........................................................................................ 40

*Wilcox v. Wilcox*, 406 S.W.2d 152 (Ky. 1966)............................................. 16

## **Statutes**

Fair Labor Standards Act (FLSA), 29 USC, § 201, *et seq* ................... *passim*

Kentucky Wage & Hour Act, Ky. Rev. Stat. § 337.285 *et seq.* ............ *passim*

29 U.S.C 206(a)(1) ....................................................................................... 24

29 U.S.C 207(g)(2) ....................................................................................... 25

29 U.S.C. 254(b)(2) ............................................................................... 34, 35

KRS 336.010(1)(c) ....................................................................................... 39

KRS 337.385(2) ..................................................................................... 28, 29

## **Regulations**

29 CFR 778.115 ................................................................................ 25, 28, 38

29 CFR 785.39 .............................................................................................. 27

29 CFR 785.41 .............................................................................................. 32

803 KAR 1:060 §7(5) ....................................................................... 25, 28, 38

803 KAR 1:065 Section 7(4) ........................................................................ 27

## **Rules**

Fed. R. Civ. P. 56 ......................................................................................... 13

Fed. R. Civ. P. 56(a) ..................................................................................... 13

## COUNTER-STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee does not believe oral argument is necessary to resolve this appeal. The District Court found the Plaintiffs-Appellants' claims failed as a matter of well-settled law, and the propriety of its grant of summary judgment can be determined upon review of the Parties' briefing and the District Court's Order.

## COUNTER-STATEMENT OF ISSUES PRESENTED

1.      Whether the District Court properly granted summary judgment as a matter of law in favor of Defendant-Appellee on Plaintiffs-Appellants' claims of breach of contract.

2.      Whether the District Court properly granted summary judgment as a matter of law in favor of Defendant-Appellee on Plaintiffs-Appellants' claims of unpaid wages under the Kentucky Wage & Hour Act, Ky. Rev. Stat. § 337.285 *et seq*.

## COUNTER-STATEMENT OF THE CASE

Upon motion of Defendant-Appellee Sky Bridge Resources, Inc., the Western District of Kentucky dismissed, as a matter of law, the breach of contract and wage and hour claims of Plaintiffs-Appellants, Stephen Abell *et al*. In the same Order, the District Court denied the cross-motion for partial summary judgment filed by the Plaintiffs-Appellants. The District Court's analysis of prevailing law was sound, and Plaintiffs failed to allege any relevant dispute of material fact sufficient to deny summary judgment in favor of Defendant. Plaintiffs now make several new arguments for the first time on appeal that should be considered waived and the District Court's grant of summary judgment should be affirmed.

# I.    FACTS.

Plaintiffs-Appellants (Plaintiffs) are thirteen former employees of Defendant-Appellee Sky Bridge Resources, LLC (Defendant). Plaintiffs were hired by Sky Bridge president George Cronen and each were employed at varying times and for varying durations between 2009 and 2012. Affidavit of George Cronen, RE 69-3, PageID # 290. Their employment required extensive and regular travel away from their homes to hospitals and medical facilities owned and operated by Kindred Health Care to perform information technology (IT) work. *Id.*

Plaintiffs were hired by Defendant to install and update computers and computer software at hospitals and medical facilities owned by Kindred Health Care around the country. *Id.* at PageID # 289-290. Specifically, Defendant hired Plaintiffs for two positions: PC Tech and Cable Tech. *Id.*  PC Tech employees installed and tested computer hardware and software, working with local personnel as well as project managers and technical support staff back in Louisville to ensure new equipment was properly upgraded. *Id.* Cable Tech employees installed new wiring and switches and conducted network testing at Kindred facilities. *Id.* Plaintiffs were recruited by Defendant for these positions based on their prior experience in the IT field. *Id.*

Both positions required regular travel to facilities all over the country. Typical Sky Bridge assignments for Kindred took PC Techs and Cable Techs from Bos-

2

ton to Los Angeles and all points in between. Commonly, Plaintiffs departed by plane from Louisville (or their respective home city if different) early on Monday mornings, worked during (and sometimes in excess of) regular hours at medical facilities out of town throughout the week, and then flew back to Louisville on Friday afternoon. Travel times sometimes varied depending on the particular destination. Deposition of Stephen Abell, RE 69-4, PageID # 300.

Upon hiring, the Plaintiffs each signed a document titled "Employment Agreement" with the Sky Bridge logo in the header at the top of the page. Employment Agreement, RE 69-17, PageID # 443-446. Each Agreement included an introductory paragraph identifying the employee, their job title, and the client for which Defendant was leasing their services. *Id.* at PageID #443. The Agreement also included twelve provisions defining the nature and requirements of the employment relationship including the rate of pay for each employee. *Id*. at PageID # 443-446.

In each Agreement, a paragraph titled "Compensation" listed the rate of pay each Plaintiff would receive for their "hours worked." *Id*. at PageID # 444. The rates of pay varied from $18.00 per hour to $22.00 per hour, depending on the employee. Third Amended Complaint, RE 54, PageID # 231. The "Compensation" paragraph also stated that "you acknowledge and agree that you are not entitled to any other compensation or benefits (including, but not limited to, vacation, holi-

3

days, or personal leave) from SKYBRIDGE." Employment Agreement, RE 69-17, PageID # 444.

Plaintiffs' pay for Hours Worked was not the full extent of the compensation they received, however. They also received pay for Hours Traveled. Prior to signing the Agreement, each Plaintiff was notified either by a representative of Defendant or by a representative of Kindred that they would be compensated for any time spent traveling to and from out-of-town work sites at half the Hours Worked rate of pay (per Kindred policy). Affidavit of George Cronen, RE 69-3, PageID # 290. Nearly half of the Plaintiffs admitted that they were notified of this policy and accepted it before signing the Agreement.

For example, Stephen Abell, the lead Plaintiff, admitted in his deposition that he was made aware of the different rate for Hours Traveled prior to signing the Employment Agreement with Defendant:

Q. At what point in time were you told the amount of your travel pay?

A. During an initial conversation with George Cronen over the phone.

Q. Was that the conversation that happened before your first meeting with Ms. Probus and –

A. At Kindred? Yes it was.

Q. Okay. And what was the amount of travel time that Mr. Cronen discussed with you?

A. He said he was going to pay me half time for traveling because he wasn't going to pay me the contract rate for sitting my butt on a plane.

Q. And that information was provided to you before you signed the employment agreement?

A. It was.

Q. And you accepted that as your pay for that work, correct?

A. I did.

Deposition of Stephen Abell, RE 69-4, PageID #299.[1]

Similarly, Plaintiff James Webb testified that he was told about the difference between Hours Worked and Hours Traveled during an interview with a Sky Bridge employee named Ryan, before he signed the Employment Agreement:

Q. Did Ryan discuss with you that the $16 an hour was for hours worked?

A. Yes.

Q. Did Ryan discuss with you that travel time would be compensated at $8 an hour?

A. I was told half time.

Q. So you weren't specifically told $8 an hour. You were told that it would be half of the 16; is that correct?

A. Yeah. I don't recall there being a monetary value assigned to it, just that it was half.

Q. And did you agree to accept that as your compensation for SkyBridge?

A. I did, yes.

---

[1] Plaintiffs incorrectly attribute to Stephen Abell the contention that "Defendant unilaterally reduced the rate of pay" some time "after the Employment Agreement was executed." DN 16, Page 32. But Abell's actual testimony, quoted above, clearly shows that the lower rate for Hours Traveled was disclosed and agreed to prior to the execution of the Employment Agreement.

Q. After you accepted that, were you presented with an employment agreement?

A. Yes.

...

Q. So you believe that SkyBridge should have paid you $16 an hour for your travel time. Is that what you're trying to tell me?

A. Yes, to work and from work.

Q. But you understood before you worked there that they were going to compensate you at half, correct?

A. Yes.

Deposition of James Webb, RE 69-14, PageID # 417, 423.[2]

Other Plaintiffs testified that they learned about the differing rates of pay for Hours Worked and Hours Traveled during orientation (immediately after signing the Employment Agreements), or by the end of their first pay period, but all of them continued working for Sky Bridge. Deposition of Michael Marrero, RE 69-10, PageID # 371.[3] Regardless of when or how they were informed, the Employment Agreements they signed were silent on the rate of pay for Hours Traveled.[4]

---

[2] *See also*, Deposition of Michael Woolard, RE 69-16, PageID # 438; Deposition of Adam Lardner, RE 69-8, PageID # 342, 345-346; Deposition of Christopher Pasiuk, RE 69-11, PageID # 379.

[3] *See also*, Deposition of Robert Pugh, RE 69-12, PageID # 393, 397; Deposition of Joshua Jackson, RE 69-7, PageID # 334; Deposition of Kishma McCray, RE 69-9, PageID # 357-358, 363; Deposition of Michael Hartman, RE 69-6, PageID # 319. Plaintiff Rebecca Blades testified that she did not remember whether she was told before or after she signed the Agreement. Deposition of Rebecca Blades, RE 69-5, PageID # 312. Chad Spaulding testified that he received his full Hours Worked rate of pay for time traveled for several weeks after hiring, but this error was soon corrected and Spaulding continued working. Deposition of Chad Spaulding, RE 69-13, PageID #

Once they began their employment with Defendant, Plaintiffs were given identical time sheets to fill out and submit at the end of each week. Sky Bridge Time Sheet, RE 69-18, PageID # 447. The time sheets included separate boxes for Hours Worked and Hours Traveled. *Id*. The plaintiffs all testified that they reported the hours they spent doing on-site IT work as Hours Worked and reported their time spent in air transit between Louisville and the work sites as Hours Traveled, and that they understood the difference. Deposition of Stephen Abell, RE 69-4, PageID # 302.[5] Plaintiffs received repeated training on how to report their hours and the difference between Hours Worked and Hours Traveled. Deposition of Christopher Pasiuk, RE 69-11, PageID # 382. During the entirety of their employment, all Plaintiffs were paid for all the hours they reported. Deposition of Michael Woolard, RE 69-16, PageID # 438.[6] This included all reported Hours Traveled re-

---

402, 403, 411. The error was confirmed by George Cronen as clerical in nature and was promptly corrected. Affidavit of George Cronen, RE 69-3, PageID # 291.

[4] There is one possible exception. Plaintiff Christopher Pasiuk testified that the Employment Agreement he signed specifically included a provision stating Hours Traveled would be paid at half the Hours Worked rate. Deposition of Christopher Pasiuk, RE 69-11, PageID # 381. Neither party was able to produce a copy of this Agreement in discovery.

[5] *See also*, Deposition of Adam Lardner, RE 69-8, PageID # 344, 345; Deposition of Robert Pugh, RE 69-12, PageID # 393; Deposition of Rebecca Blades, RE 69-5, PageID # 313; Deposition of Joshua Jackson, RE 69-7, PageID # 334; Deposition of Kishma McCray, RE 69-9, PageID # 358; Deposition of Timothy Wemes, RE 69-15, PageID # 429; Deposition of Michael Hartman, RE 69-6, PageID # 321; Deposition of Chad Spaulding, RE 69-13, PageID # 406-407; Deposition of Christopher Pasiuk, RE 69-11, PageID # 381,382.

[6] *See also*, Deposition of Rebecca Blades, RE 69-5, PageID # 315; Deposition of Kishma McCray, RE 69-9, PageID # 365; Deposition of Timothy Wemes, RE 69-15, PageID # 433; Deposition of Michael Hartman, RE 69-6, PageID # 326. Note that Michael Hartman testified that after he submitted his resignation to Sky Bridge, he was told not to return to work but nevertheless received the next two weeks' worth of pay at his full Hours Worked rate. *Id*.

gardless of whether those hours occurred outside their regular work days. Deposition of Adam Lardner, RE 69-8, PageID # 345, 348.[7]

## II.    PROCEDURAL HISTORY.

In 2013, after each had separated from their employment with Defendant, Plaintiffs filed a Complaint alleging three claims: breach of contract, failure to pay wages required by the federal Fair Labor Standards Act (FLSA), 29 USC, § 201, *et seq.*, and failure to pay wages required by the Kentucky Wage and Hour Act (KWHA), Ky. Rev. Stat. § 337.285 *et seq.,* Complaint, RE 1, PageID #1-4. In response to Defendant's subsequent Motion for a More Definite Statement, RE 7, Plaintiffs filed an Amended Complaint with identical language and claims. Amended Complaint, RE 12, PageID # 45-49.

Defendant then filed a motion to dismiss all of the Plaintiffs' claims in their Amended Complaint because they sought to recover wages for travel time to which they were not entitled under the FLSA or the KWHA. Defendant's Motion to Dismiss, RE 19. The District Court granted Defendant's motion to dismiss, but limited its ruling to the FLSA claim for travel time. Memorandum Opinion and Order, RE 35, PageID # 149-150. Because the FLSA rules governing travel time outside the normal workday were "well established," the District Court concluded that "Plain-

---

[7] *See also*, Deposition of Robert Pugh, RE 69-12, PageID # 394; Deposition of Rebecca Blades, RE 69-5, PageID # 313, 315; Deposition of Joshua Jackson, RE 69-7, PageID # 337; Deposition of Kishma McCray, RE 69-9, PageID # 359-360; Deposition of Michael Hartman, RE 69-6, PageID # 322; Deposition of Chad Spaulding, RE 69-13, PageID # 406-411; Deposition of Christopher Pasiuk, RE 69-11, PageID # 383.

tiffs' claims for travel compensation in those circumstances under the FLSA must be dismissed." *Id*. Plaintiffs did not appeal this order, but did file a Second Amended Complaint to add Chad Spaulding as a plaintiff. Second Amended Complaint, RE 39, PageID # 163-167.

After discovery proceeded for several months, Plaintiffs filed a Third Amended Complaint, this time adding a final plaintiff and modifying the language of their FLSA claim to exclude travel time outside normal working hours. Third Amended Complaint, RE 54, PageID # 230-234. Once depositions of all Plaintiffs were taken, the parties filed cross-motions for summary judgment. Defendant's Motion for Summary Judgment, RE 69; Plaintiffs' Motion for Partial Summary Judgment, RE 70.

The District Court granted Defendant's motion and denied Plaintiffs' motion. Memorandum Opinion, RE 80, PageID # 548-555. The District Court held that Plaintiffs' claims for breach of contract failed as a matter of law. *Id*. at PageID # 553. Because "the employment agreements are silent as to the 'hours travelled' rate," the District Court considered "the surrounding circumstances and conduct of the Plaintiffs and Sky Bridge," finding that Plaintiffs were aware before or immediately after entering the agreements and therefore "assented to these terms when they continued working at the half-rate for hours travelled." *Id*. at PageID # 551-552. The District Court also dismissed Plaintiffs' claim for unpaid wages under the

KWHA because "Kentucky courts construe the state law as consistent with the federal law," and Plaintiffs' FLSA claims had already been correctly dismissed. *Id.* at PageID # 554. Plaintiffs then filed a timely Notice of Appeal. Notice of Appeal, RE 82, PageID # 557.

## SUMMARY OF ARGUMENT

### I.    THERE WAS NO BREACH OF CONTRACT.

The District Court correctly ruled that Defendant did not breach the employment agreements with each Plaintiff. The agreements stated a rate of pay for Hours Worked but were silent on the rate for Hours Traveled, which was paid at half the Hours Worked rate. Because the agreements were silent on this vital matter, the District Court properly considered the "surrounding circumstances and the conduct of the participants," finding that the Plaintiffs had knowledge of the differing rates of pay prior to and during their employment and continued to submit time sheets and work under such an arrangement for many months despite the difference. Memorandum Opinion, RE 80, PageID # 551-553.

Plaintiffs now argue that Defendant "consistently, intentionally, and wrongfully failed to pay the Plaintiffs wages they were contractually and statutorily owed," DN 16, Page 20, and that the Employment Agreements should, in hindsight, be interpreted in a way totally at odds with the mutual understanding and the conduct of the parties at the time. In truth, Defendant performed as promised, and

Plaintiffs accepted the agreed-upon rates of pay for their employment without protest.

It is clear from each Plaintiff's testimony that they all accepted and continued their employment with Sky Bridge with full knowledge that their time spent traveling would be compensated at half the rate of their time spent doing IT work. They were told about the Hours Traveled policy during their pre-employment interviews. They filled out time sheets every week that separately listed Hours Worked and Hours Traveled. They received training and guidance on how to report each category of time. They cashed their pay checks and continued to report to work each week, some for as long as three years.

Plaintiffs now ask this Court to construe their Employment Agreements in a way totally at odds with the mutual understanding and conduct of the parties at the time because Plaintiffs, in hindsight, wish they had been paid more. The District Court rightly rejected this argument and this Court should affirm.

## II.    THE PLAINTIFFS WERE NOT DENIED STATUTORILY REQUIRED PAY.

Plaintiffs argued below that the KWHA requires compensation for time spent traveling outside normal working hours. This view is directly in conflict with the identical language of the KWHA's federal counterpart, the FLSA. That argument having rightly failed before the District Court, Plaintiffs now pivot to a claim that the KWHA requires pay for travel time identical to the rate for other work, or,

in the alternative, an overtime rate in excess of what Defendant was legally obligated to pay.

The District Court must be affirmed. First, the Kentucky Wage & Hours Act neither compels the same rate of pay for all work performed nor compels compensation for time spent traveling outside normal work hours. Second, most of Plaintiffs' arguments on appeal about unpaid wages and overtime are waived because they were never raised in the proceedings below. Third, there is no dispute of material fact. Defendant regularly compensated Plaintiffs for time spent on airplanes outside their normal working hours, even though it had no duty to do so under prevailing federal and state law, and Defendant regularly paid Plaintiffs a higher rate for overtime than it was obligated to pay. Plaintiffs did not produce any evidence to the contrary in the proceedings below. As the District Court correctly concluded, Plaintiffs' claims for unpaid wages cannot be sustained.

## STANDARD OF REVIEW

The Sixth Circuit Court of Appeals reviews a district court's grant of summary judgment *de novo*. *Henderson v. Walled Lake Consol. Sch*., 469 F.3d 479, 486 (6th Cir. 2006). Summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (U.S. 1986). A party moving for summary judgment bears the burden of demonstrating an absence

of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The ultimate question is ... whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014).

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' BREACH OF CONTRACT CLAIMS.

The District Court construed the Employment Agreements in this case to be silent on a vital matter: the rate of pay owed to Plaintiffs for Hours Traveled. Memorandum Opinion, RE 80, PageID # 551. Accordingly, the lower court considered the intentions of the parties from the surrounding circumstances as well as the parties' subsequent conduct to determine whether a breach of the Agreements had occurred. *Id.* The District Court rightly concluded that no breach had occurred because Plaintiffs were aware of the different rate of pay for Hours Traveled at the time they were hired and subsequently continued their employment with Defendant, therefore assenting to the terms of their compensation. *Id.* at PageID # 552.

Plaintiffs now ask this Court to adopt a strict construction of the Employment Agreements that would foreclose any consideration of the surrounding circumstances. They do so because those surrounding circumstances compel the dismissal of their claims. To construe the Employment Agreements as unambiguous and to broadly define the term "hours worked" to mean all time spent in Defend-

13

ant's employ would be to reach an absurd result totally at odds with the mutual understanding and subsequent actions of the parties.

"The construction as well as the meaning and legal effect of a written instrument, however compiled, is a matter of law for the court." *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893 (Ky. 1992) (citing *Equitable Life Assurance Soc. v. Wells*, 101 F.2d 608, 610 (6th Cir. 1939). Plaintiffs argue that unless there is some kind of ambiguity obvious on the faces of the Employment Agreements, this Court may only construe the party's intentions from the four corners of the documents, and no consideration of the surrounding circumstances is appropriate. DN 16, Page 24 (citing *Hoheimer v. Hoheimer*, 30 S.W. 3d 176, 178 (Ky. 2000)).

Indeed, it is generally the case that evidence of the party's conduct after the execution of the agreement is not to be considered unless there is some ambiguity or silence on a material term in the contract. "When a contract is silent with respect to a matter vital to the rights of the parties, a court, in construing it, is necessarily compelled to resort to a consideration of the surrounding circumstances and the conduct of the participants indicating their interpretation." *Dennis v. Watson*, 264 S.W.2d 858, 860 (Ky. Ct. App. 1953); accord *Rudd-Melikian, Inc. v. Merritt*, 282 F.2d 924, 928 (6th Cir. 1960); *see also Reynolds Metals Co. v. Barker*, 256 S.W.2d 17, 19 (Ky. 1953). "Where a contract is incomplete on its face because it fails to

specify a material term of the agreement, 'parol and other extrinsic evidence should [be] adduced to establish the agreement's missing term.'" *Transport Ins. Co. v. Ford*, 886 S.W.2d 901, 906-907 (Ky. Ct. App. 1994) (quoting *Anderson v. Britt*, 375 S.W.2d 258, 261 (Ky. 1963)).

But, it is impossible to determine whether there is an ambiguity or a missing material term in the first place unless there is *some* analysis of the surrounding circumstances. The intentions of the parties must be discerned before an ambiguity or omission can be identified. That is why courts regularly look beyond the four corners of a contract to construe it even when there is no immediately-apparent ambiguity.

"[I]n construing a contract [courts] must seek out the intention of the parties and ascertain how they meant the agreement to operate when they entered into it. One guide in determining such intention is to look to the acts of the parties in the execution and fulfillment of the agreement." *Jones v. Linkes*, 267 S.W.2d 936, 937 (Ky. 1954); *see also Wilcox v. Wilcox*, 406 S.W.2d 152, 153 (Ky. 1966) ("In construing a contract, the intention of the parties governs."); and *Cinelli v. Ward*, 997 S.W.2d 474, 478 (Ky. Ct. App. 1999) ("When construing a contract, it is well established that the court may look to surrounding circumstances and the parties' conduct as a guide.").

15

The Kentucky Supreme Court has concisely explained this two-step process of contractual construction. First, the court discerns the parties' intentions. Then, if the contract lacks a term vital to those intentions, the court looks to the parties' conduct after execution:

> In construing contracts... we are required to look to the intention of the parties and to ascertain how they meant the agreement to operate when they entered into it. But when a contract is silent with respect to a matter vital to the rights of the parties, a court, in construing it, is necessarily compelled to resort to a consideration of the surrounding circumstances and the conduct of the participants indicating their interpretations.

*Ranier v. Mt. Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991) (citing *Wilcox*, 406 S.W.2d at 153; *Parrish v. Newbury, Ky.*, 279 S.W.2d 229 (Ky. 1955); *Jones*, 267 S.W.2d 936; and *Caudill v. City of Maysville, Ky.*, 178 S.W.2d 945, 946 (Ky. 1944) (internal quotations omitted)).

The record in this case is clear, and the intentions of the parties are evident. Before Plaintiffs signed the Employment Agreements or began working for Defendant, they were notified that they would be paid two different rates of pay. They would be paid one rate for Hours Worked, which was time spent performing IT tasks at remote job sites on behalf of Defendant and its client, Kindred. They would be paid a different rate for Hours Traveled, which was time spent sitting on airplanes. The Plaintiffs admitted to being made aware of this policy either during

16

their initial interviews, at the time they signed the Employment Agreements, or during their initial orientation sessions.

The executed Agreements, however, contained a provision for compensation that only specified an hourly rate for "hours worked":

> 3. Compensation – In consideration of your services, SKYBRIDGE agrees to pay you at the following rate of $_____ for hours worked (as reflected on approved and verified time records)...

Employment Agreement, RE 69-17, PageID # 444. The Agreements do not contain a glossary or any other definitional reference for the term "hours worked." The only qualifier associated with the term is that Defendant would pay Plaintiffs for hours worked "as reflected on approved and verified time records." *Id*.[8]

In an employment agreement of any kind, rates of pay and definitions of work to be performed must be considered "vital." Because the Employment Agreements lacked any mention of the Hours Traveled rate of pay, they were silent on a matter vital to the agreement.

As noted above, where a contract is silent on a vital matter, courts must look to the "conduct of the participants indicating their interpretation." *Dennis*, 264 S.W.2d at 860; *Jones*, 267 S.W.2d at 937. This analysis is the same when a party

---

[8] Provision 2 of the Employment Agreements stated that Plaintiffs "agree to submit to the SKYBRIDGE office...completed time records..." Employment Agreement, RE69-17, PageID # 444. The time records submitted by Plaintiffs contained two categories: Hours Worked and Hours Traveled. Sky Bridge Time Sheet, RE 69-18, PageID # 447.

17

alleges that an employment contract violated wage and hour laws. *Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944) (analysis requires "appraisal of their practical construction of the working agreement by conduct" of the parties).[9]

When employees continue to work, despite distaste for an employer's compensation policy, they imply agreement with that policy. *See, e.g.*, *General Electric Co. v. Porter*, 208 F.2d 805, 813 (9th Cir. 1953), cert. denied, 347 U.S. 951 (1954) ("It is elementary . . . that acceptance may be made by express words or by conduct"); and *Owens v. Local No. 169*, 971 F.2d 347, 354-355 (9th Cir. 1992). Employees' dislike of an employer's policy "does not negate the existence of an agreement...continuance of employment can be evidence of an implied agreement to the terms of that employment." *Rousseau v. Teledyne Movible Offshore, Inc.*, 805 F.2d 1245, 1248 (5th Cir. 1986) (citing *Shepler v. Crucible Fuel Co.*, 140 F.2d 371, 374 (3rd Cir.1949)).

The District Court invoked this legal framework (Memorandum Opinion, RE 80, PageID # 551) then assessed the conduct of the parties after the execution of the Agreements to discern whether Plaintiffs assented to the Hours Traveled rate or whether, as Plaintiffs now argue, Defendant "intentionally" or "unilaterally" changed this missing term of the written contracts. DN 16, Page 20, 32.

---

[9] Plaintiffs attempt to distinguish *Skidmore* because it dealt with an oral contract rather than a written contract. DN 16, Pages 27-28. But the principles articulated in *Skidmore* apply regardless of whether a contract is written or oral. Courts do not construe silence in contracts differently based on that criteria alone.

Based on the Plaintiffs' consistent testimony, the District Court correctly concluded that Plaintiffs' acceptance of employment with Defendant, regular attendance at their various job sites, dutiful filling out of time sheets (which distinguished Hours Worked from Hours Traveled), and receipt of both rates of pay for their IT work and their travel indicated "their assent to Sky Bridge's hours travelled policy." Memorandum Opinion, RE 80, PageID # 551-552.

A similar situation occurred in the case of *Harrison v. Clarksville*, where a district court in the Sixth Circuit found no breach or wage violations where employees consented to work under the terms of an employer's compensation plan even though the employees disliked the terms:

> New hires have an opportunity before accepting employment to discover the terms of employment that are material to their decisions whether to take their jobs. Failure to discuss a particular term before accepting a position indicates either that the term was not material to the decision to accept the job, or that the term, though material, was simply overlooked. Where the parties discover the oversight shortly after hire, and the employee decides to continue in his employment and to accept his paycheck, the employee's actions manifest his acceptance of the originally overlooked term, even though he expresses his objection to the term.

*Harrison v. Clarksville*, 732 F. Supp. 810, 815 (M.D. Tenn. 1990) (citing *Ariens v.*

*Olen Mathieson Chemical Corp.*, 382 F.2d 192, 194, 197 (6th Cir. 1967), and

*Rousseau*, 805 F.2d 1245).

Despite these well-settled principles, Plaintiffs in this case now argue, contrary to their own testimony, that Defendant breached the Agreements because Plaintiffs understood the term "hours worked" to mean literally any time spent during their employment, whether actually performing the IT work they were hired to do or traveling on airplanes. And they argue that this construction of "hours worked" is the only reasonable one, citing a dictionary, DN 16, Page 30, as well as the statutory definition of travel time as compensable "worktime" under the FLSA and KWHA. DN 16, Page 33.

Neither of these authorities is relevant to the question of breach in this case because the parties never used any of these references to define the terms of their agreement. The Employment Agreements contain no glossary or reference to statutory or regulatory provisions, and the pre-hiring discussions between the Plaintiffs and Defendant never included such references. As noted above, the only qualifier associated with the terms of compensation in the actual Agreements was that Defendant would pay Plaintiffs for hours worked "as reflected on approved and verified time records." Employment Agreement, RE 69-17, PageID # 444. The time

records regularly submitted by Plaintiffs contained two categories: Hours Worked and Hours Traveled. Sky Bridge Time Sheet, RE 69-18, PageID # 447.

Courts should not construe the words of a contract in a way that divorces them from their meaning as understood by the parties. It is a "fundamental" rule of construction that "words shall be accorded their ordinarily used meaning *unless the context requires otherwise*." *Bays v. Mahan*, 362 S.W.2d 732, 733 (Ky. 1962) (emphasis added); *see also Bradford v. Billington*, 299 S.W.2d 601, 604 (Ky. 1957) ("Non-technical words generally are to be understood in their ordinary and popular sense, *unless the intent of the parties to use them otherwise is shown clearly from the context*.") (emphasis added). "It is the duty of the courts to take the words of the [contract] as they are found in it and as persons with usual and ordinary understanding would construe them *when used to express the purpose for which they were employed*." *Jefferson Standard Life Ins. Co. v. Hurt*, 254 Ky. 603, 608 (Ky. 1934) (emphasis added).[10]

The persons with "usual and ordinary understanding" in this case are not members of the general public who may have happened upon a copy of the Sky Bridge Employment Agreement nailed to a light post. The persons with "usual and ordinary understanding" as to how the words of the Employment Agreement were

---

[10] In *Jefferson Standard Life Ins. Co.*, the Kentucky Court of Appeals had to construe the word "permanent" as used in an insurance contract. The Court did not ascribe to the word its strict dictionary definition (meaning "absolute perpetuity" or "everlasting"), but rather its more nuanced meaning as used by similar parties in similar cases. *Id.* at 611-613.

"used to express the purpose for which they were employed" are the Plaintiffs and Defendant, the actual parties to this case.

"Hours worked" was not used in the Employment Agreements to mean all hours. Plaintiffs testified that they understood, prior to or upon signing the Employment Agreements, that "hours worked" meant hours spent actually doing IT work they were hired to perform at remote job sites. Hours spent traveling on airplanes, during which no IT work of any sort was required (or able) to be performed, were distinct. With this understanding, the Plaintiffs all signed the Employment Agreements and completed orientation.

Plaintiffs' subsequent conduct was consistent with their pre-hiring understanding of Defendant's dual compensation policy. After signing the Agreements and completing orientation, Plaintiffs continued to report for duty for many months. The time sheets that each Plaintiff filed every week they worked for Defendant reflected the distinct definitions of Hours Worked and Hours Traveled, and Plaintiffs received repeated training on how to accurately report their time in each category throughout the course of their employment. They filled out and submitted these sheets without protest.

Plaintiffs now ask this Court to don blinders and construe the term "hours worked" in a way that is totally at odds with both the understanding of the parties at the time the agreements were signed and with the parties' subsequent perfor-

mance. No doctrine of construction compels such an absurd result. The District Court rightly considered the full context of the Employment Agreements and rejected Plaintiffs' breach of contract arguments. RE 80, PageID # 552. This Court should affirm.

## II.    THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' UNPAID WAGES CLAIMS.

Plaintiffs' arguments in favor of their unpaid wages claims can be divided into two categories, which differ considerably. In the first category are the claims for unpaid wages they stated and argued in the proceedings below, as found in their Third Amendment Complaint and in their briefing in support of their own Motion for Partial Summary Judgment and in response to Defendant's Motion for Summary Judgment. In the second category are new claims and arguments for unpaid wages they make for the first time on appeal. Each category will be addressed below.

### a.    Plaintiffs' Claims, as Stated in Their Third Amended Complaint and as Argued in Their Motion for Partial Summary Judgment, Fail as a Matter of Law.

In addition to a breach of contract claim, Plaintiffs stated claims for unpaid wages under the Fair Labor Standards Act and under the Kentucky Wage & Hour law. Third Amended Complaint, RE 54, PageID #232-233.

In support of their FLSA claim, Plaintiffs stated in their Third Amended Complaint that "[c]ontrary to federal law, the Defendant did not pay the Plaintiffs

their full wage for time spent traveling away from home inside regular working hours." *Id*. at PageID # 232. The "full wage" alleged to be required by the FLSA was their Hours Worked rate, rather than their Hours Traveled rate. Plaintiffs' Memo in Support, RE 70-1, PageID # 481. Plaintiffs stated no specific claim for unpaid overtime under the FLSA in their Third Amended Complaint.

Plaintiffs' FLSA claim for underpaid travel time was correctly dismissed by the lower court in an earlier ruling not now on appeal. Memorandum Opinion & Order, RE 35, PageID #149-150. The FLSA does not require any particular rate of pay for any time worked or traveled, nor does it require that all hours of employment be compensated at an identical rate. The FLSA requires only that hours of employment be compensated at a rate not below the minimum wage. 29 USC 206(a)(1).

No other statute or case law requires all compensation that employees receive to be "full" or the exact same as any other wage they are paid. The FLSA itself acknowledges that employees can lawfully be paid different rates for different types of activities. For example, 29 USC 207(g)(2), which deals with the calculation of overtime pay, states that compensation may vary for "performing two or more kinds of work for which different hourly or piece rates have been established." Similarly, both federal and Kentucky regulations anticipate that some workers will be paid at different rates for different work, and provide guidance on

how to calculate overtime pay in those situations. 29 CFR 778.115 ("Employees working at two or more rates."); 803 KAR 1:060 §7(5) ("Employees working at two (2) or more rates.").

Long-standing case law is also unfavorable to Plaintiffs on this issue. "[A]n employer has the right to make contractual stipulations pertaining to wages and hours, provided the employees are not compensated in a lower scale than the minimum rate..." *F. W. Stock & Sons, Inc. v. Thompson*, 194 F.2d 493, 498 (6th Cir. 1952) (citing *General Mills, Inc. v. Williams*, 132 F.2d 367, 370 (6th Cir. 1942)).

Perhaps that is why, as the District Court noted, the Plaintiffs did "not argue that...the Fair Labor Standards Act...require[s] an employer to pay an employee the same rate for every hour worked." Memorandum Opinion, DN 80, PageID # 551. And Plaintiffs never argued that they were ever paid for any time at a rate less than the minimum wage.

Not only did Plaintiffs not argue that the FLSA required identical rates of pay for all compensable time or that they were paid less than the minimum wage, they actually conceded that they had no viable claim under the FLSA at all. In their Motion for Partial Summary Judgment, Plaintiffs stated:

> ...Plaintiffs' claims pursuant to the federal wage and hour statute are...restricted to compensation at their contractual rate for those hours spent traveling away from home 'during normal working hours.' This

means that there is *no claim* for more than 40 hours per week *or for overtime*, *or time and a half*, pursuant to the federal statute.

Plaintiffs' Memo in Support, RE 70-1, PageID # 479 (emphasis omitted and added).[11]

Their FLSA claim having been voluntarily abandoned or dismissed in its entirety, the Plaintiffs pivoted instead to their claim for unpaid wages under the Kentucky Wage & Hour Act.[12] In their Motion for Partial Summary Judgment, Plaintiffs first argued that the KWHA, unlike the FLSA, required Defendant to pay for "all hours beyond the 40 hour work week," such as time spent traveling that occurred outside normal work hours. *Id*. at PageID #480. Second, Plaintiffs argued that unlike the FLSA, the KWHA required Defendants to pay the same rate for all time, including time spent traveling. *Id*. at PageID # 481.[13]

To the first claim, there is no reason why the KWHA would compel compensation for all travel time "beyond the 40 hour work week" when the FLSA – as Plaintiffs conceded – does not.  As the lower court correctly noted, the KWHA

---

[11] Plaintiffs contradicted themselves later in their summary judgment brief, stating that "[e]ven under the FLSA, some of the Plaintiffs' claims remain" because "[p]art of Plaintiffs' claim does concern time inside regular hours for which they were not fully paid." Plaintiffs' Memo in Support, DN 70-1, PageID #482. But the question whether Plaintiffs were "fully paid" for such time turned entirely on whether the Plaintiffs were entitled to their Hours Worked rate for time spent traveling, which they were not under the contract or under any prevailing wage and hour law.

[12] In their Third Amended Complaint, Plaintiffs stated a claim under KRS 337 for unpaid wages including "overtime and pay for time spent traveling away from their home community." RE 54, PageID # 233.

[13] As stated above, the FLSA does not require that all work time be compensated at the same rate, and Plaintiffs have never identified any language to the contrary in the KWHA.

"contains nearly identical language" to the FLSA, and "Kentucky courts interpret the Act consistent with federal law." Memorandum Opinion, RE 80, PageID # 553 (quoting *Starr v. Louisville Graphite, Inc*., 2016 WL 1612940 (Ky. Ct. App. 2006)).

The prevailing Kentucky regulation, 803 KAR 1:065 Section 7(4), establishes the state rule for when travel is considered compensable worktime:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties.

Its federal counterpart, 29 CFR 785.39, begins nearly identically:

> Travel that keeps an employee away from home overnight is travel away from home. Travel away from home is clearly worktime when it cuts across the employee's workday. The employee is simply substituting travel for other duties.

The *only* difference between the first three sentences of the two regulations is the use of the word "clearly" in the federal version. Certainly the state version must be considered a near-verbatim adoption of the federal rule and thus they should be interpreted identically. Though the state regulation lacks additional, clar-

ifying language like that found in the federal regulation, it contains no language to the contrary. The District Court rightly interpreted them as identical. Memorandum Opinion, RE 80, PageID # 554.

That also means Plaintiffs' second argument in favor of summary judgment, that the KWHA required identical pay for all compensable work time, also fails as a matter of law. There is no language in either the FLSA or the KWHA that compels identical pay for all types of work performed for an employer, and there is no reason to interpret the statutes differently, especially because the relevant state regulation, like its federal counterpart, anticipates differing rates of pay. 29 CFR 778.115; 803 KAR 1:060 §7(5).

In support of their Motion for Partial Summary Judgment, Plaintiffs argued below that KRS 337.385(2) effectively prohibited their own acceptance of a lesser rate for different types of work. Plaintiffs' Memo in Support, RE 70-1, PageID # 482.[14] But KRS 337.385(2) applies only where an employee can establish that they actually suffered damage from an "act or omission" resulting in unpaid wages. The statute, titled "Employer's liability," becomes relevant once an employee "shows to the satisfaction of the court" that their employer is actually liable for wage and hour violations – it does not restrict otherwise lawful agreements between employers and employees on the rates at which different types of work will be paid. The

---

[14] Plaintiffs misidentified the statute as "KRS 337.285(2)."

purpose of the statute is to prevent employers from dodging liability or liquidated damages for failing to pay the minimum wage (or other mandated wages) by arguing that the employees agreed work for less than what the law requires.

Now, on appeal, Plaintiffs obliquely weave their unpaid wages arguments into their breach of contract claim, arguing that because some travel time that occurs during normal work hours is compensable under the above regulations, Hours Traveled should therefore have been paid at the exact same rate as all Hours Worked under the employment agreements between Plaintiffs and Defendant. DN 16, PageID # 33-34. But the KWHA, like the FLSA, does not require any such thing. As stated above, regardless of whether "travel away from home is worktime" under the relevant state and federal regulations, DN 16, Page 33, employers are not required by law to pay the same rate for every form of worktime. *F. W. Stock & Sons, Inc.* 194 F.2d at 498.

Try as they might, the Plaintiffs cannot articulate any viable claims for unpaid wages under the FLSA or the KWHA. In fact, Plaintiffs *were* paid for all the time they spent traveling, regardless of whether it was technically compensable under the FLSA and KWHA, and now they simply wish they had been paid *more*, despite having knowingly agreed to the lower – yet lawful – rate by accepting employment with Defendant and continuing to work for many months. The District

Court rightly granted summary judgment on these claims and this court should affirm.

### b.    Plaintiff Cannot Raise on Appeal New Issues and Arguments Related to Unpaid Wages.

"It is the general rule...that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("[A]n argument not raised before the district court is waived on appeal to this Court."). This rule eases appellate review because it leaves first consideration of legal and factual issues to the district court. *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir. 1993).

This rule of waiver is relaxed only in "exceptional cases." *Foster*, 6 F.3d at 407. In *Fairlane Car Wash Inc. v. Knight Enters., Inc*., this Court explained that it generally considers issues not raised in the district court only when "the issue is one of law, and further development of the record is unnecessary." 396 F. App'x 281, 286 (6th Cir. 2010). And this Court has "rarely exercised such discretion." *Scottsdale Ins. Co*., 513 F.3d at 552.

Plaintiffs now present several new theories as to why they are owed additional pay for hours spent traveling. First, they argue that because they "routinely engaged in compensable work during travel," their time spent traveling outside the normal workweek should be compensable. DN 16, Page 38-40. Alternatively, they argue that they were entitled to "full" pay for all hours traveled as a matter of De-

fendant's custom or practice. DN 16, Page 41-42. As a second alternative, they argue that there is a dispute of fact regarding when each Plaintiffs' compensable work day began and ended which might reveal that certain travel time was compensable. DN 16, Page 42-44. Finally, as a third alternative, Plaintiffs argue that there is a genuine issue of material fact based on "self-selected math" from Defendant's Motion For Summary Judgment. DN 16, Page 44-46.[15] Plaintiffs made none of these arguments in the District Court proceedings and have therefore waived them on appeal. Each will be addressed below.

i.    *Routine Engagement in Compensable Work During Travel.*

The parties in this case exchanged cross-motions for summary judgment. Plaintiffs not only had the opportunity to raise issues of law and fact in their own motion and reply, but also in their response to Defendant's motion. At no point in the proceedings below did the Plaintiffs argue that simply because they voluntarily engaged in clerical work during their time spent traveling that they were somehow unpaid or underpaid, as they now argue in their opening brief before this Court. DN 16, Page 38-40. This argument is therefore waived. *Scottsdale Ins. Co.*, 513 F.3d at 552. But even if this "routine engagement in work" argument is not considered waived, it is unsupported by the facts.

---

[15] Plaintiffs make redundant arguments earlier in their brief. DN 16, Pages 36-38. These arguments, regarding the calculation of overtime, will all be addressed together, in section II.b.iv, below.

Plaintiffs rely on the rule that "any work which an employee is required to perform while traveling must, of course, be counted as hours worked." *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999) (citing 29 CFR 785.41).

This rule is irrelevant to this case for two reasons. First, the rule requires that employees be *required* to perform work in order for travel time to be compensable as worktime.[16] Plaintiffs in this case never produced any evidence that they were required to do anything other than sit on the plane as they traveled. Any clerical work they performed was purely voluntary, and could have been done at the job site or upon return to Plaintiffs' workspaces in Louisville.

In their brief, Plaintiffs cite only to Robert Pugh's testimony, arguing that he "would routinely *have* to go over project details with the supervisors while on the plane and/or update various spreadsheets and documents." DN 16, Page 39 (emphasis added). But that is not what Robert Pugh actually said. He testified that "sometimes when we're on the aircraft, we technically were working because I went over a lot of details with my project manager on a couple of occasions" including "check[ing] worksites" and updating "different Excel sheets" on his "own personal laptop." RE 69-12, PageID # 397. At no point did Pugh testify that he was *required* to do any work tasks while on airplanes, only that he chose to do them

---

[16] The rule does not require travel time spent working to be compensated at any particular rate, however, or at the same rate as any other type of work.

"on a couple of occasions" with his own computer. No other Plaintiff testified that they performed any work while traveling, required or otherwise.[17]

Second, in *Aiken*, the city of Memphis refused to pay police officers on the "Canine Unit" for any time spent traveling to the police station with their dogs. 190 F.3d at 758. This Court conducted the appropriate analysis under the Portal-to-Portal Act and determined that the travel time sought by the officers, even though it required the presence of their work dogs, did not qualify as compensable work time. *Id. Aiken* is easily distinguishable because Plaintiffs' claims for unpaid time in this case do not involve routine commutes to and from their primary workplace, and Plaintiffs were not actually denied pay for their travel time (regardless of whether they performed work during that time or not). There was never any time spent in the employ of Defendant for which Plaintiffs were not compensated. Defendant in this case actually paid Plaintiffs for *all* of their travel time, just at a lower hourly rate than they retroactively decided they wanted to receive.

      ii.    *Custom and Practice*.

Plaintiffs also argue, for the first time on appeal, that Defendant's "custom and practice" of paying Plaintiffs for their noncompensable travel time required additional overtime pay. DN 16, 41-42. At no point in their Third Amended Com-

---

[17] Plaintiffs' completed time sheets were not due back to Defendant until "Monday by noon," so there was no requirement that Plaintiffs even complete their time sheets for the week during the return flight on Fridays. Deposition of Stephen Abell, RE 69-4, PageID # 302.

plaint or in any of their summary judgment briefing did the Plaintiffs make this argument and the District Court had no reason to consider it. RE 70-1, 72, 74. The "custom and practice" argument should therefore be considered waived. *Scottsdale Ins. Co.*, 513 F.3d at 552.

Even if not waived, this argument fails. Plaintiffs reliance on 29 U.S.C. 254(b)(2) is misplaced. Employers shall not "be subject to any liability or punishment" if an employee seeks to recover unpaid wages for "activities not compensable" such as travel "to and from the actual place of performance of the principal activity" of employment. 29 U.S.C. 254(b)(2). But activities otherwise noncompensable are considered compensable if they are normally paid as part of an employer's custom or practice, entitling plaintiffs who were denied pay to recover unpaid wages for those activities. 29 U.S.C. 254(b)(2). But, the statute does not provide any relief for parties who did actually receive compensation for otherwise noncompensable activities. It merely prevents defendant employers from escaping liability for not paying those who would otherwise have been paid according to the employers' customs. In this case, Plaintiffs *were* paid for their travel time, consistent with their Employment Agreements, so there is no liability for Defendant to attempt to be relieved from, and thus 29 U.S.C. 254(b)(2) is irrelevant.

iii.    *Regular Working Hours.*

Plaintiffs additionally claim, for the first time on appeal, that variations in their own testimony regarding the time they started and ended their work days creates a factual issue regarding their "regular working hours." DN 16, Pages 42-44. Plaintiffs complain that "the District Court failed to make any such determination or analysis," and therefore reversal is appropriate. DN 16, Page 44.

There was no failure by the court below. The District Court did not make any such determination or analysis because Plaintiffs never raised that issue in any of their summary judgment briefing. They now ask this Court to give them a second chance to make their case. But, as this Court has explained time and time again, it will only consider new issues raised for the first time on appeal "to prevent manifest injustice...where the proper resolution is beyond any doubt or where injustice...might otherwise result." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615 (6th Cir. 2014), quoting *Taft Broad Co. v. United States*, 929 F.2d 240, 244 (6th Cir. 1991). As the district court correctly ruled, the proper resolution in this case is beyond any doubt, and it is not in favor of the Plaintiffs.

Even if this issue is not waived, Plaintiffs rely on dubious citations to the record to support the argument that their "regular working hours were much broader" than a typical 9:00 a.m. to 5:00 p.m. work day. DN 16, Page 42. For example, Stephen Abell did not actually "note" that Plaintiffs' regular working hours were

35

8:30 a.m. to 5:30 p.m. The page of his deposition to which Plaintiffs cite contains no such notation – Abell only discusses varying departure and arrival times for flights to remote job locations. Deposition of Stephen Abell, RE 69-4, PageID # 303. Similarly, Kishma McCray never "placed the end of their working day at 6:00 p.m." DN 16, Page 42. He did, however, testify that their typical work day at a remote job site from Tuesday to Thursday began around "8 in the morning," but he conceded that Defendant's counsel was "asking the wrong person on that." Deposition of Kishma McCray, RE 69-9, PageID # 362. Other Plaintiffs' testimony that they would "work until 8:00 p.m." or "stay as late as midnight" does not establish that their regular work days ended at those times, only that they often worked long hours while doing IT work. DN 16, Page 43. Defendant has never disputed that Plaintiffs often worked overtime at remote sites, and Plaintiffs do not dispute that they were compensated for that time.

Plaintiffs' deposition testimony was inconsistent on this topic due to a combination of memory loss, long hours at remote job sites, and varying travel itineraries. Therefore, the most reliable witness regarding Plaintiffs' regular working hours is George Cronen, Defendant's president and Plaintiffs' employer. He stated that any time prior to 9 a.m and any time after 5 p.m. occurred "outside the normal work day." Affidavit of George Cronen, RE 69-3, PageID # 291. Plaintiffs can point to no definite or consistent evidence that refutes this.

But, regardless of when Plaintiffs' work days began or ended, they were fully compensated for all time spent traveling. A determination of the precise start and end times of their work days would be necessary only if they had not been compensated for some of their otherwise compensable travel time and thus could sustain a claim under the FLSA or KWHA. But they *were* compensated for *all* of their time spent traveling, so it is unnecessary for this Court to conduct any further analysis on this issue, even if Plaintiffs' arguments had not been waived. There is no question of compensability to answer.

   iv. *Overtime Calculations.*

For the first time on appeal, Plaintiffs present a number of overlapping arguments that Defendant owes them unpaid overtime for time spent traveling on airplanes. DN 16, Pages 36-38, 44-46. These new arguments differ dramatically from those made during the course of summary judgment briefing in the court below.

After arguing that Plaintiffs' claims should fail as a matter of law, Defendant presented an alternative argument in its Motion for Summary Judgment that, based on the only available records produced during discovery, Plaintiffs had actually suffered no damage at all, and therefore could not sustain claims under the FLSA or KHWA even if they were otherwise viable, because Plaintiffs were routinely *overpaid* for their Hours Traveled as well as their overtime pay. Defendant's

Memo in Support, RE 69-1, PageID # 279-285. Plaintiffs were paid for all of their travel time outside of normal working hours despite the fact that Defendant was not required by federal or state law to pay them at all. *Id*. at PageID # 279-282. And Plaintiffs were routinely paid a higher overtime rate than they were owed, resulting in overpayment no matter which legally compensable hours were included in the calculations. *Id*. at PageID # 282-284.[18]

Plaintiffs never raised any factual issue regarding the calculation of overtime hours in their own briefing. Rather, Plaintiffs *conceded* that they could not prove how many hours they actually spent traveling, even *if* those hours had been excluded from overtime calculations to their detriment:

> The Court will note that Plaintiffs actually have a claim for all travel time...but because no accurate records were kept of such time...Plaintiffs are unable to prove their claims for those work hours.

Plaintiffs' Memo in Support, RE 70-1, PageID # 478.[19]

Then, after Defendant produced records showing that Plaintiffs had actually been paid more than what they were legally owed, and had suffered no damage, Plaintiffs responded that such evidence "does not matter if the contractual agree-

---

[18] "Where an employee in a single workweek works at (2) or more different types of work for which different nonovertime rates of pay have been established, his hourly rate for the week is the weighted average of such rates. That is, his total earnings are computed to include compensation during the workweek from all rates, then divided by the total number of hours worked at all jobs." 29 CFR 778.115; 803 KAR 1:060 §7(5).

[19] The District Court noted this concession as well, quoting it in full in the opinion below. RE 80, PageID # 552.

ment to pay a stated wage for hours worked binds the Defendant to pay that wage for time spent traveling away from home." Plaintiffs' Response to Defendant's Motion, RE 72, PageID # 519. Further, Plaintiff argued that "Defendant's argument about overpaying is superfluous except inasmuch as it is reason to consider KRS 336.010(1)(c)..." that travel time should qualify as "wages." *Id*. at PageID # 520.[20] Plaintiffs' retort was not that certain hours were improperly excluded from overtime calculations, but that the Hours Worked rate should apply to all compensable time worked by Plaintiffs, therefore entitling them to more pay. In other words, this was an extension of their breach of contract claim.[21]

Now, citing Defendant's Motion for Summary Judgment, Plaintiffs argue for the first time that not only should Hours Traveled have been compensated at the same rate as Hours Worked, but that all Hours Traveled, regardless of whether they were even legally compensable, should have been calculated toward overtime. DN 16, Page 37. Or, in the alternative, Plaintiffs argue that even if some of the travel time is excluded from calculations due to its occurrence outside the regular workweek, a different method of calculation would entitle them to additional pay. DN 16, Page 45.[22]

---

[20] On appeal, Plaintiffs make no reference to KRS 336.010(1)(c).
[21] The District Court did not directly address the issue of overtime calculations, instead ruling that Plaintiffs' claims for breach of contract failed as a matter of law because all of the parties knowingly agreed or otherwise assented to the dual rates of pay. RE 80, PageID # 553.
[22] Plaintiffs have never addressed the fact that overtime pay for employees receiving different rates for different work is calculated with a weighted average of the two rates, which, in this

Plaintiffs cannot now attempt to dispute Defendant's previous arguments about overpayment when they failed to do so before the District Court. In *Hayward v. Cleveland Clinic Found.*, this Court declined to consider the plaintiffs' arguments about issues previously raised by defendants because the plaintiffs "had ample opportunity to brief this issue in their responses to Defendants' motions, yet they failed to do so." 759 F.3d 601, 615 (6th Cir. 2014); see also *United States ex rel. TVA v. 1.72 Acres of Land*, 821 F.3d 742, 751 (6th Cir. 2016) (argument waived because party "did not respond to this argument below."). In this case, Plaintiffs had an opportunity to present factual evidence rebutting Defendant's argument that they were overpaid, but failed to do so. For that reason their new arguments are waived. And even if not waived, they are ultimately irrelevant because Plaintiffs were not entitled to any additional pay under either their Employment Agreements or the KWHA as a matter of law, as explained above and as the District Court correctly held.

## CONCLUSION

All thirteen Plaintiffs in this case admitted that they were aware of and agreed to the terms of the Employment Agreements signed with Defendant Sky Bridge Resources. Those terms included two rates of pay: one rate for time spent working on IT projects at remote job sites, called Hours Worked, and a lesser rate

---

case, would result in an overtime rate significantly less than what the Plaintiffs actually received. Defendant's Memo in Support, RE 69-1, PageID # 282-285.

for time spent traveling, called Hours Traveled. Both rates of pay were above the federal and state minimum wages and did not otherwise violate prevailing law. Though the Employment Agreements were silent on the Hours Traveled rate, all Plaintiffs understood and otherwise assented to that term by signing the agreements, reporting to work, and accepting the appropriate pay for the entirety of their employment.

Having considered these facts, the court below properly concluded that Plaintiffs' claims for breach of contract and violations of the Kentucky Wage & Hour Act failed as a matter of law. For the above stated reasons, Defendant requests that this Court affirm the District Court's grant of summary judgment dismissing Plaintiffs' claims.

<div style="margin-left:40%">

Respectfully Submitted,

*s/ L. Joe Dunman*
_____

Garry R. Adams
L. Joe Dunman
CLAY DANIEL WALTON & ADAMS, PLC
101 Meidinger Tower
462 S. Fourth Street
Louisville, KY 40202
(502) 561-2005
*Counsel for Defendant-Appellee*

</div>

## CERTIFICATE OF COMPLIANCE

1.      The undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). This brief contains no more than 10,500 words, and no more than 1,050 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      The undersigned certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared in 14-point Times New Roman font.

*s/ L. Joe Dunman*
Counsel for Defendant-Appellee
Dated: September 12, 2016

## CERTIFICATE OF SERVICE

It is hereby certified that on September 12, 2016, I electronically filed the foregoing Brief for Defendant-Appellee with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system, and service was accomplished through same.

*s/ L. Joe Dunman*
Counsel for Defendant-Appellee
Dated: September 12, 2016

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Description | PageID # |
|---|---|---|
| RE 1 | Complaint | 1-4 |
| RE 7 | Defendant's Motion for a More Definite Statement | 18-31 |
| RE 12 | Amended Complaint | 45-49 |
| RE 19 | Defendant's Motion to Dismiss | 68-86 |
| RE 35 | Memorandum Opinion and Order | 149-150 |
| RE 39 | Second Amended Complaint | 163-167 |
| RE 54 | Third Amended Complaint | 230-234 |
| RE 69 | Defendant's Motion for Summary Judgment | 263-264 |
| RE 69-1 | Defendant's Memo in Support of its Motion for Summary Judgment | 265-286 |
| RE 69-3 | Affidavit of George Cronen | 288-292 |
| RE 69-4 | Deposition of Stephen Abell | 293-307 |
| RE 69-5 | Deposition of Rebecca Blades | 308-315 |
| RE 69-6 | Deposition of Michael Hartman | 316-327 |
| RE 69-7 | Deposition of Joshua Jackson | 328-339 |
| RE 69-8 | Deposition of Adam Lardner | 340-350 |
| RE 69-9 | Deposition of Kishma McCray | 351-365 |
| RE 69-10 | Deposition of Michael Marrero | 366-375 |
| RE 69-11 | Deposition of Christopher Pasiuk | 376-387 |
| RE 69-12 | Deposition of Robert Pugh | 388-398 |
| RE 69-13 | Deposition of Chad Spaulding | 399-413 |
| RE 69-14 | Deposition of James Webb | 414-423 |
| RE 69-15 | Deposition of Timothy Wemes | 424-434 |
| RE 69-16 | Deposition of Michael Woolard | 435-442 |
| RE 69-17 | Employment Agreement | 443-446 |
| RE 69-18 | Sky Bridge Time Sheet | 447 |
| RE 70 | Plaintiffs' Motion for Partial Summary Judgment | 474-475 |
| RE 70-1 | Plaintiffs' Memo in Support of Their Motion for Partial Summary Judgment | 476-484 |
| RE 72 | Plaintiffs' Response to Defendant's Motion for Summary Judgment | 510-521 |
| RE 73 | Defendant's Response to Plaintiffs' Motion for Summary Judgment | 522-532 |
| RE 74 | Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Summary Judgment | 533-536 |

| RE 77 | Reply in Support of Defendant's Motion for Summary Judgment | 541-546 |
|-------|-------------------------------------------------------------|---------|
| RE 80 | Memorandum Opinion | 548-555 |